IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

FILED
DEC 0 4 2012
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 09-049-M-DWM |
| | CV 12-129-M-DWM |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION |
| | AND DENYING CERTIFICATE |
| JEREMIAH LETTIERE, | OF APPEALABILITY |
| Defendant/Movant. | |

On July 23, 2012, Defendant/Movant Jeremiah Lettiere ("Lettiere"), a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Lettiere also filed various exhibits.

**I. Preliminary Screening**

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

1

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On September 3, 2009, a deputy on patrol in Missoula spotted a white truck being pursued on city streets by a blue truck. As the deputy approached, the blue truck caused the white truck to roll over onto its top and then crashed into a fence. The driver, Patrick Collins, accused the people in the white truck of robbing him of $12,000 and five pounds of marijuana. 3 Trial Tr. at 128:16-19. Lettiere, Michael File, and Skye Bruns were in the white truck. All four were arrested.

Three weeks letter, a federal officer swore out a Complaint against Lettiere. Lettiere made his initial appearance the same day. On October 7, 2009, a grand jury indicted him, along with File and Bruns, on one count of committing a Hobbs Act robbery, a violation of 18 U.S.C. § 1951(a) (Count 1), and one count of using and

brandishing[1] a firearm during a crime of violence, a violation of 18 U.S.C. § 924(c) (Count 2). Indictment (doc. 22) at 2-3. Assistant Federal Defender Andrew J. Nelson was appointed to represent Lettiere. Order (doc. 12).

On December 3, 2009, Lettiere filed a motion to change his plea to guilty, along with a fully executed plea agreement in which he agreed to plead guilty to Count 2 in exchange for dismissal of Count 1. Mot. to Change Plea (doc. 58); Plea Agreement (doc. 59) (under seal) at 2-3 ¶ 4, 11 ¶ 13. Ultimately, however, Lettiere chose to go to trial. Minutes (doc. 67); Change of Plea Tr. (doc. 129) at 4:15-5:5. The motion was denied on December 22, 2009, and jury trial was set for January 4, 2010. Scheduling Order (doc. 71) at 1 ¶ 1, 7.

Trial commenced on January 4, 2010. File and Collins both testified that, in the course of a marijuana sale in a motel room, Lettiere pulled a gun out from between the mattresses of one of the beds, made sure Collins saw it, and instructed everyone in the room as to what to do. Bruns and File took Collins's marijuana and left Collins, Lettiere, and a go-between, Ryan "Sticky" Camp, in the motel room. File testified that as he left the room, Lettiere gave him the gun; Collins testified he

---

[1] The United States did not need to prove both using and brandishing to obtain a conviction on Count 1. But that is the way it charged the crime and the way it agreed the jury should be instructed, so that is what it was required to prove at trial. See *United States v. Lettiere*, 640 F.3d 1271, 1276-77 (Tashima, J., concurring).

thought Lettiere had the gun the whole time, but he was not sure. A few minutes after Bruns and File left, Lettiere told Collins he was going to see what was taking Bruns so long, as she was supposedly going to return with Collins's money. Instead, when Lettiere reached the parking lot, he jumped into the white truck with Bruns and File and the three of them fled. Collins decided to chase them. A short time later, all four were arrested at the scene of the traffic accident.

On January 5, 2010, the jury found Lettiere guilty of both robbery and using and brandishing a gun in the course of the robbery. Verdict (doc. 93) at 1. On April 9, 2010, Lettiere was sentenced to serve 51 months on Count 1 and 84 months on Count 2, consecutive, to be followed by a five-year term of supervised release. Minutes (doc. 113); Judgment (doc. 117) at 2-3; 18 U.S.C. § 924(c)(1)(A)(ii).

Lettiere appealed, challenging the jury instruction defining the term "brandish." On May 23, 2011, the Court of Appeals approved the instruction and affirmed his conviction. *United States v. Lettiere*, 640 F.3d 1271, 1276 (9th Cir. 2011).

Lettiere's conviction became final ninety days later, on August 21, 2011. *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012); *Clay v. United States*, 537 U.S. 522, 527 (2003). He had one year from that date to file his § 2255 motion. 28 U.S.C. § 2255(f)(1). He timely filed on July 23, 2012.

## III. Claims and Analysis

### A. Federal Jurisdiction

No realistic legal challenge to federal jurisdiction is available under circumstances involving a dealer, Collins, who was moving 400 to 500 pounds of marijuana for a profit of $400-$500 per pound in one year, 3 Trial Tr. at 189:6-21, as well as a gun that was brought into Montana from Wyoming at Lettiere's instruction, *id.* at 112:1-113:6. "In adopting the Controlled Substances Act, Congress expressly found that intrastate drug trafficking had a 'substantial affect' on interstate commerce." *United States v. Tisor*, 96 F.3d 370, 375 (9th Cir. 1996). "Commerce from one state to another was or would have been affected in some way, even if de minimis," Jury Instr. No. 10, by robbery of an intrastate drug trafficker. *United States v. Rodriguez*, 360 F.3d 949, 957 (9th Cir. 2004) ("Congress has specifically found, and this court has reiterated, that intrastate drug activities have a substantial effect on interstate commerce."). Contrary to Lettiere's claim, Mot. § 2255 Ex. 1 (doc.136-1) at 1, there was no need for Collins to testify that his supplier received marijuana from out-of-state.

Federal jurisdiction as to the weapons charge was equally sound. *United States v. Staples*, 85 F.3d 461, 463 (9th Cir. 1996), *disapproved on other grounds by United States v. Foster*, 165 F.3d 689, 692 & n.5 (9th Cir. 1999) (en banc).

All claims asserting lack of federal jurisdiction are denied.

**B. Prosecutorial Misconduct**

"[P]rosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (internal quotation marks, brackets, and citations omitted). "[E]ven if the government unwittingly presents false evidence, a defendant is entitled to a new trial if there is a reasonable probability that without the evidence the result of the proceeding would have been different." *United States v. Endicott*, 869 F.2d 452, 455 (9th Cir. 1989).

**1. Testimony from Bruns and Camp**

Lettiere asserts the prosecutor lied to the jury when she falsely claimed she could not call Camp or Bruns to testify because Bruns was a co-defendant and Camp, too, would have had to admit to a crime. Lettiere claims that Bruns simply refused to testify and Camp had already given a written statement incriminating himself. Ex. 1 (doc. 136-1) at 1; 4 Trial Tr. at 288:4-12.

Bruns was a co-defendant and plainly had a right under the Fifth Amendment to refuse to testify, which is exactly what Lettiere admits she did. As for Camp's

6

written statement – assuming, as Lettiere alleges, it was written by Camp – it is not a waiver of Camp's Fifth Amendment privilege. It is common, for instance, for a defendant to make self-incriminating statements in a tape-recorded interview with police. At trial, a prosecutor might introduce that interview into evidence, laying foundation for its admission through a police witness who attended the interview. But admission of the tape does not mean the prosecution can simply call the defendant as a witness at trial, because he still has his Fifth Amendment right not to testify. Likewise, even if the prosecutor could have laid foundation for admission of Camp's written statement, admission of the written statement still would not mean the prosecution could call Camp as a witness. Consequently, Lettiere's argument that the prosecutor lied is wrong.

In addition, Lettiere believes the prosecutor was motivated to lie about why she could not call Camp and Bruns because, if more witnesses had testified, there would have been more discrepancies in the testimony and therefore a greater likelihood he would have been acquitted. Ex. 1 (doc. 136-1) at 1. But the written statement Lettiere relies on says:

> . . . jeremiah crosses the room again, comes back and sits back in his chair again and crosses his leg over his knee. It's this motion that brings my attention to the pistol in his hand . . . . I am very alarmed by this – it just doesn't seem right, but jeremiah only says "I know this must be a shock, but I like my money. Just stay cool." It's his show. Patrick is

> losing the color in his face, I'm just trying to stay calm, hoping that everything is going to be okay, suddenly wondering what I'm doing here. "here's how it's gonna go" says jeremiah, "I'm playing god now – mike, take that cooler and your bag down to the truck, but wait for sky here. Patrick, you load that bag back up and give it to sky." Patrick immediately protests that he has 12000 dollars in the bag and he can't let them take the weed without payment. . . .

Camp Statement (doc. 136-2) at 2. The remainder of the statement is remarkably similar to the trial testimony. *Compare id.* at 2-3 *with* 3 Trial Tr. at 121:17-124:6 (File), 170:13-173:3, 179:5-180:19 (Collins).

Discrepancies in witnesses' recollections as to who said or did what and when are commonplace. It is highly unlikely that a reasonable juror would have found the minor discrepancies among File's, Collins's, and Camp's testimony sufficient to create a reasonable doubt as to whether Lettiere held a gun at the ready while he robbed Collins of his cash and marijuana. All three agreed on that point.

### 2. "Pointed"

Lettiere claims the prosecutor lied when she said, in closing argument, that "the gun was pointed at the alleged victim." Ex. 1 (doc. 136-1) at 2. Collins testified that Lettiere "actually pointed the gun towards me." 3 Trial Tr. at 171:25-172:1.

### 3. "Knock Him Out"

Lettiere alleges the prosecutor convinced File to testify that Lettiere told Collins File would "knock him out." Ex. 1 (doc. 136-1) at 2. As the citations in

Lettiere's motion show, the jury heard about the discrepancies in File's statements as well as File's incentive to testify against him Lettiere. It may be worth noting, as well, that Camp's written statement also says Lettiere told Collins that Collins would "get his ass knocked out by mike" unless he calmed down. Camp Statement at 3.

### 4. Collins's Pre-Trial Interview

Lettiere contends that something unlawful happened when the prosecutor asked Collins whether the transcript of his recorded interview accurately reflected what he said or what happened. Ex. 1 (doc. 136-1) at 2; Attachment 2 (doc. 136-2); *compare* 3 Trial Tr. at 192:7-193:12 *with id.* at 199:16-201:4. There was nothing unlawful about that question. Collins testified that what he said in the transcribed interview was not accurate because File did not say anything about knocking anyone out, only Lettiere did. It was up to the jury to decide whether Lettiere said it or File said it or no one said it and what it all meant. There was no misconduct.

### 5. Cumulative Prejudice

Finally, because there was no prosecutorial misconduct, Lettiere suffered no cumulative prejudice.

### 6. Conclusion

All claims of prosecutorial misconduct are denied.

### B. Ineffective Assistance of Counsel

9

*Strickland v. Washington*, 466 U.S. 668 (1984), governs claims alleging ineffective assistance of counsel. First, Lettiere must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Second, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### 1. Failure to Call Witnesses

Lettiere claims defense counsel should have called five witnesses – Collins, File, Agent Herd, Detective Newell, and Camp – to ask questions or elicit testimony about certain matters that Lettiere outlined for counsel. "With the right questions," Lettiere wrote to counsel before trial, "this trial is a cakewalk." Ex. 2 (doc. 136-1) at 1; Attachment 4 (doc. 136-2 at 15-24).[2]

Camp was not called, but his written statement, which Lettiere submitted and

---

[2] Lettiere briefly mentions a few other witnesses to his conduct the night before the robbery. He suggests they could have shown how much money he had and how much he was drinking. Whatever the relevance of this testimony, it would have little bearing on what happened in the motel room.

on which he relies, incriminates Lettiere. The other four witnesses testified, and defense counsel cross-examined them.

As to whether counsel should have presented those witnesses in a defense case in chief, the questions Lettiere provided may have shown Lettiere already had plenty of money and possibly that he paid for the marijuana, that witnesses' perceptions and Lettiere's ability to act could have been clouded by alcohol, and that Collins, as an experienced marijuana dealer, was more sinister than the trial testimony otherwise suggested. Lettiere also seems to suggest that Camp expected a $6,000 finder's fee and actually had $12,000 when Collins left the room to chase after Lettiere. Attachment 4 at 6.[3] Even assuming all these facts were true, they do not contradict or explain away the central facts of the case: Collins's backpack was in File's truck, it contained both marijuana and $12,000, Collins chased Lettiere, and Lettiere tried

---

[3] Beginning with the fact, established at trial, that Lettiere agreed to buy ten pounds of marijuana for $30,000, Lettiere says the total amount represented $2,400 per pound plus a $6,000 finders fee, so the $12,000 in Collins's backpack must have been payment for five pounds of marijuana – either the five pounds Collins brought to the motel or the five pounds outstanding. But Collins testified that he typically charged $3,000 to $3,300 per pound. 3 Trial Tr. at 189:14-15. At trial, no one suggested there was an agreed finder's fee, and Lettiere's exhibits do not suggest one. (File, on the other hand, figured he would get $4,000 to $5,000 from Lettiere for driving up from Cody, Wyoming. He also said that, when Lettiere called him and asked him to come to Missoula with his gun, "I didn't know if there was going to be some kind of con on somebody or what was going to happen, but I had a pretty good idea that somebody was going to get taken." 3 Trial Tr. at 129:1-4.)

11

very hard to elude him.[4] Nor do they get at the central fact of both File's and Collins's testimony – Lettiere had a gun and let Collins see it in order to intimidate him in the motel room, then directed Bruns and File to take Collins's backpack. That was the moment the robbery occurred, whether it came about as a result of a "bad deal" or, as File testified, as the fruition of Lettiere's plan.

Defense counsel's strategy for dealing with the central facts was to concede that a theft occurred and press the jurors to focus on whether they believed File and/or Collins, beyond a reasonable doubt, when they said Lettiere used a gun to intimidate Collins. Counsel homed in on precisely the most questionable aspects of their testimony in a good closing argument. 4 Trial Tr. at 276:17-286:6. Nothing in Lettiere's § 2255 motion suggests this strategy was unreasonable. And nothing in Lettiere's motion, questions, or the record of the case suggests a reasonable probability that the tangential facts explored in Lettiere's questions would have created a reasonable doubt in a reasonable juror's mind.

### 2. Plea Bargain

Lettiere asserts that he backed out of the plea agreement when he understood

---

[4] Lettiere is correct, Attachment 4 at 3, that File must have taken the gun out of the motel room, because the gun was found in his duffel bag at the scene of the accident, and there was no time for Lettiere to put it there before the chase began. That does not affect Collins's belief that Lettiere still had the gun, and, at any rate, the robbery had already occurred.

it would require him to tell law enforcement everything he knew. Ex. 2 (doc. 136-1) at 1. He says, "Petitioner was left ultimately with cooperating on other cases or to go to trial." Ex. 2 at 2. He claims, therefore, that counsel was ineffective in failing to advise him of the option of "just pleading guilty for a deal" or of the prospect of a three-level reduction in his offense level for acceptance of responsibility. *Id.* at 1-2.

Had Lettiere pled guilty, any potential reduction in his offense level would have applied on to the advisory guideline calculation on Count 1. On Count 1, Lettiere's range was 51 to 63 months. Had he received a two- or three-level reduction in his offense level under U.S.S.G. § 3E1.1, his advisory guideline range would have been either 41-51 months or 37-46 months, depending on when he went through with the plea and whether the United States moved for the third level. Lettiere's total sentencing exposure, therefore, would have dropped from about twelve years to about ten if he had received credit for accepting responsibility.

On October 17, 2012, the United States was ordered to respond to this claim by filing all plea offers made to Lettiere. Order (doc. 139). It responded on October 30, 2012. The United States asserts that it made two plea offers:

1. *November 2, 2009.* This offer required Lettiere to plead guilty to both counts in exchange for a two-level reduction in his advisory guidelines offense level under U.S.S.G. § 3E1.1, an additional one-level reduction if he signed and filed the agreement two weeks before trial, and the United States' recommendation for a sentence on Count 1 at the low end

13

of the advisory guideline range. The agreement also required Lettiere to waive his right to appeal if he received either a within- or below-guidelines sentence or a motion under U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35(b). Proposed Plea Agreement (doc. 140-1) at 2-3 ¶ 4, 10-12 ¶¶ 11-12, 13-16 ¶ 15.

2. *December 3, 2009.* This offer required Lettiere to plead guilty only to Count 2, which would result in a seven-year sentence under the statute, but it conditioned Count 1's dismissal on Lettiere's providing a truthful written proffer, complete information on any subject he was asked about, and testimony "if called upon in any proceeding." Proposed Plea Agreement (doc. 59) at 2-3 ¶ 4, 11-12 ¶ 13. Lettiere signed and filed this agreement but backed out of it at the change of plea hearing. Change of Plea Tr. at 4:15-5:5.

Lettiere replied on November 26, 2012, stating that his counsel did not tell him about the November 2 offer. Reply to Resp. (doc. 143) at 1.[5]

Lettiere is entitled to an evidentiary hearing on this claim if the facts he alleges, "if true, would entitle him to relief." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (citing *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982)). Therefore, I assume, for the sake of argument, that counsel did not, in fact, relay the first plea offer to Lettiere. I also assume that such failure constitutes deficient performance. *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1408 (2012). The question is whether there is a reasonable probability Lettiere would have accepted the

---

[5] The differences between the first plea offer and an open plea are minimal. The proposed agreement required Lettiere to waive his right to appeal and obligated the United States to recommend a sentence on Count 1 at the low end of the advisory guideline range. Thus, Lettiere's claim that he did not know about the first plea offer and his claim that he did not know about the three-level reduction for acceptance of responsibility are addressed together.

14

offer if he had known about it. *Id.* at 1409.

Based on the materials Lettiere submitted with his § 2255 motion, as well as his statements and conduct in the underlying proceedings, there is no such reasonable probability. First, on January 4, 2010, before trial began, counsel said, "we got a witness statement last Monday that Mr. Lettiere advises me would have affected his decision to move to change his plea." 1 Trial Tr. at 4:1-3. But, far from indicating he would not have backed out of the plea agreement, counsel further explained that Lettiere "would not have moved to change his plea in the first instance," *id.* at 4:15-17, if he had known of the witness's statement. Lettiere was present when counsel made this statement. *Id.* at 3:5-7, 6:17-18. The truth of the statement was critical to Lettiere's theory of a speedy trial violation. *Id.* at 3:16-4:19. He cannot disavow it now.

Second, Lettiere wrote to counsel on December 17, 2009 – after he backed out of the December 3 offer – "With the right questions, this trial is a cakewalk." Attachment 4 at 1. That is not a statement made by a man who is so concerned he will be found guilty that he would forego the chance of acquittal at trial in order to reduce his sentencing exposure from about 12 years to about ten.

Third, Lettiere points out that, after trial and before sentencing, his attorney asked him to provide a statement of his acceptance of responsibility. Attachment 6

15

(doc. 136-2). Yet Lettiere did not provide one. Presentence Report ¶ 25. If Lettiere was not willing to accept responsibility after the jury convicted him, there is no reason to believe he was seriously interested in pleading guilty before trial. Although he may not like the verdict or sentence, Lettiere plainly wanted a trial.

Even if counsel did not relay the first plea offer to Lettiere, his conduct did not prejudice his client, because Lettiere would not have accepted the offer.

### 3. Jury Questions

Lettiere alleges that counsel "never objected to the Jury's questions during deliberations being answered and heard before the jury reached a verdict. This should have been resolved by all." Ex. 2 (doc. 136-1) at 2.

That is not what happened. The jury retired to deliberate at 10:17 a.m. 4 Trial Tr. at 292:13-14. Counsel briefly remained in the courtroom to confirm the instructions as given and to provide contact information. Court adjourned at 10:20 a.m. *Id.* at 292:18-294:2. At 11:54 a.m., the parties returned, *id.* at 294:3, and the parties were advised as follows:

> The Court: Well, we had a note and then the second note. The second note says, *Cancel the request for the information from the earlier. Verdict reached.*
> So the jury has arrived at a verdict. But the lunch that was ordered is just being delivered so we won't take the verdict until they have completed their lunch.
> There was an earlier question, it was about a half

16

> hour earlier, which is when we first made the call [to counsel]. It says: *Two things requested. One, definition or description of what interstate commerce is. Two, Patrick Collins' copy of his statement referred to in court.*
>
> And I don't think we have to answer either of those questions in light of the fact that there had been a verdict reached.
>
> So I thought I would give you the opportunity if you feel it's necessary to make whatever record you want to make as it related to the first [question], if you want to make a record. . . .

*Id.* at 294:7-23. There was not enough time to respond to the first note before the jury sent out its second, which expressly "cancelled" the first.

### 4. Conclusion

All claims alleging ineffective assistance of counsel are denied.

### D. Due Process

Lettiere alleges two further constitutional violations. First, he claims it was wrong for the Court to respond to the jury's questions without the input of counsel. As set forth above, that is not what happened.

Lettiere also contends that his allegation of a violation of the Speedy Trial Act should have been considered. Lettiere initially appeared on a Complaint. When that occurs, the speedy trial clock commences on the date an Indictment is made public. 18 U.S.C. § 3161(c)(1). That occurred on October 8, 2009, when the case was unsealed as to Lettiere. Docket Entry (Oct. 8, 2009). Seventy days from October 8

is December 17, 2009. But time stops when a motion is filed. 18 U.S.C. § 3161(h)(1)(D). Lettiere moved to change his plea on December 3, 2009, when fifteen days remained on the clock. His motion was denied on December 22, 2009. He filed a motion on that day, too, but it was denied the next day. The speedy trial clock resumed with December 24 as Day 1 of the remaining fifteen days. The jury was sworn on January 4, 2010 – Day 12 of the fifteen, and Day 67 of the total speedy trial clock. There was no speedy trial violation. And even if there had been, for the reasons stated on the morning of trial, the indictment would not have been dismissed with prejudice. 1 Trial Tr. at 3:19-5:11; 18 U.S.C. § 3162(a)(2); *United States v. Lewis*, 611 F.3d 1172, 1180-81 (9th Cir. 2010).

All claims of due process violations are denied.

### V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

18

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Lettiere's challenge to federal jurisdiction is meritless because the Hobbs Act robbery involved a dealer moving 400 to 500 pounds of marijuana in a year for a profit of $400 to $500 per pound as well as a gun brought from Wyoming into Montana at Lettiere's express instruction. Lettiere's claims that the prosecutor committed perjury stem either from misunderstanding how trials work or from disagreement with the trial testimo ny. Although Lettiere claims counsel was ineffective for failing to call five witnesses, four of those witnesses testified, and as to the fifth, the witness's written statement, provided by Lettiere, incriminates Lettiere. Lettiere fails to allege facts that could support an inference either that defense counsel's strategy was unreasonable or that it was prejudicial to Lettiere. The materials Lettiere submitted with his § 2255 motion, in combination with his conduct and statements in the underlying proceedings, show that he would not have pled guilty merely for the sake of obtaining a three-point reduction in the advisory guideline base offense level on one of the counts of conviction. The jury's questions were not answered because the jury "canceled" them half an hour after they were received. Finally, there was no violation of the Speedy Trial Act because Lettiere's trial commenced on Day 67.

This case is controlled by well-established law. There are no questions of first impression and there is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Lettiere's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (doc. 136) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Lettiere files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 12-129-M-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Lettiere.

DATED this __ day of November, 2012.

Donald W. Molloy
United States District Court